UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| TINA LOUISE HINKLE | ) | |
|---|---|---|
| | ) | |
| V. | ) | NO. 2:11-CV-217 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

<u>REPORT AND RECOMMENDATION</u>

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation of this request for judicial review of the denial of the plaintiff's application for disability insurance benefits under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 12 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 40 years of age on the date of onset of her disability, May 4, 2006.[1] She has a high school education. Her past relevant work experience included work as a file clerk at the light exertional level. It is undisputed now that she cannot now return to her past relevant work, although she was found to have been able to do so as of October 1, 2007, in the hearing decision in her earlier case, which became the final decision of the Commissioner (Tr. 92-101). Because no appeal was taken of that prior decision, she was not disabled as a matter of law beginning October 1, 2007. In fact, it was the request of her former counsel that she be granted the closed period of disability which was what came to pass.

Plaintiff's relevant medical history is outlined in the Commissioner's brief as follows:

> In April 2007, Plaintiff visited with Dr. Gamal Boutros, a neurologist, for complaints of lower back and right leg pain (Tr. 878). Dr. Boutros noted that Plaintiff's gait was steady and she had full range of motion in all joints (Tr. 879). An MRI showed degenerative disc disease in the cervical spine (Tr. 1078). In May 2007, Dr. James Hollandsworth, a general practitioner, noted that Plaintiff's right shoulder had "excellent result" from shoulder rotator cuff repair one year earlier (Tr. 1071). She had full range of motion and good strength (Tr. 1071). In June, Dr. Boutros noted Plaintiff had 5/5 muscle strength in her upper and lower extremities, full range of motion, and a normal gait (Tr. 941). Plaintiff told Dr. Boutros her pain was only 2/10 on the pain scale on medication (Tr. 940).
> In November 2007, Plaintiff reported that she injured her shoulder "while mowing on a hill. She slipped, grabbed on to a pole with her left hand, pulled her left shoulder" (Tr. 1048). Later that month, Plaintiff aggravated her shoulder while

---

[1]The Court says "onset" as opposed to "alleged onset" because she was found disabled and thus entitled to a closed period of disability in an earlier final decision of the Commissioner, from May 4, 2006 through September 30, 2007.

digging out a stump (Tr. 1033). In February 2008, Plaintiff underwent left rotator cuff repair surgery with Dr. Jeffery France, an orthopedic surgeon (Tr. 1245).

In March 2008, Plaintiff underwent a physical consultative exam with Dr. Samuel Breeding (Tr. 1252-56). Dr. Breeding noted Plaintiff's complaints and the fact that she smoked since she was fifteen years old (Tr. 1253-54). During the exam Dr. Breeding stated that Plaintiff was in no acute distress, her gait was normal, and her station was normal (Tr. 1254). Plaintiff was in a sling due to her recent shoulder surgery, but otherwise she had normal range of motion in all joints and full muscle strength (Tr. 1255). Following the exam, Dr. Breeding opined Plaintiff could only lift fifteen pounds with her right shoulder, temporarily could not lift anything with her left shoulder, and she should avoid repetitive activities above shoulder level (Tr. 1255). Dr. Breeding also opined Plaintiff could sit for four to six hours and stand for two to four hours in an eight-hour day (Tr. 1255-56).

By May 2008, Plaintiff reported to Dr. France her shoulder was "completely better" (Tr. 1284). She had good strength, good motion, and good stability in her shoulder (Tr. 1284). Her knee has had good strength and stability, with some popping and catching (Tr. 2184). Later that month, Dr. France reported Plaintiff's shoulder "is 100% better" (Tr. 1283). Dr. France also reported that Plaintiff's MRI on her knee showed no abnormalities (Tr. 1283).

In June 2008, Dr. Boutros noted that Plaintiff had full muscle strength, full range of motion in her joints, and a stable gait (Tr. 1292). An MRI of her lumbar spine was normal besides an enlarged bladder (Tr. 1291). In August 2008, Dr. Wade Smith, a psychological consultative examiner, stated Plaintiff's posture "is upright and gait is normal" (Tr. 1325). A cervical mylopathy showed mild spinal stenosis at the C5-C6 level secondary to a bulging disc; diffuse posterior annular bulge at the C4-C5 level, but only borderline central spinal stenotic change; prominent right uncovertebral oseteophyte at the C3-C4 level with compromise of the right C3-C4 neural foramen; and minimal disc bulge at the C6-C7 level without significant spinal stenotic change (Tr. 1304-05). A lumbar spine MRI was "essentially unremarkable" (Tr. 1308). Then in February 2010, Dr. Bruce Miller noted that Plaintiff's left wrist shows good range of motion, and she had good range of motions in her hips (Tr. 1458).

In May 2009, Dr. Boutros submitted an opinion in which he check-marked a form statingPlaintiff met Listing 1.02(A) (Tr. 1366). In terms of functional assessment, Dr. Boutros offered a single checked mark opinion stating that Plaintiff could perform less than a full range of sedentary work (Tr. 1369). Dr. Boutros offered the opinion almost one almost one year after Plaintiff's last visit with him (Tr. 1292, 1366-69). Dr. Boutros did not cite any medical records or offer any support for this opinion (Tr. 1366-69).

In May 2008, Dr. Saul Juliao, a state agency medical consultant, reviewed the file and found that Plaintiff was not disabled (Tr. 102). Dr. Juliao opined Plaintiff could perform a reduced range of light work (Tr. 1272-78). In October 2008, Dr. Kanika Chaudhuri, a second state agency medical consultant, did not find Plaintiff disabled at the reconsideration level of review (Tr. 103). Dr. Chaudhuri also opined

3

> Plaintiff could perform a reduced range of light work (Tr. 1334-40).
>
> Dr. Theron Blickenstaff, board certified in occupational medicine and general preventative medicine, provided expert testimony during a hearing with the ALJ (Tr. 36-37). Dr. Blickenstaff stated that he reviewed the file (Tr. 36), his qualifications were in the file (Tr. 197), and Plaintiff was given an opportunity to question him (Tr. 37). Dr. Blickenstaff noted that while Plaintiff had various medical problems, "most of those have been short-term problems that have cleared up or would be expected to clear up with time, and not result in permanent limitations" (Tr. 37). Dr. Blickenstaff then opined that, "reasonable limitations would include an overall exertional limit of lifting no more than 25 occasionally, ten pounds frequently, standing and walking four hours out of eight, no kneeling or crawling, no more than occasional squatting, and no more than occasional reaching overhead" (Tr. 37).

[Doc. 15, pgs. 3-5].

The plaintiff has raised no objection regarding the ALJ's findings regarding her mental impairments, so no medical evidence regarding them is included in this recitation. Any further appeal regarding her mental impairments is waived.

In addition to the testimony of Dr. Blickenstaff, who was not cross-examined by counsel (Tr. 37), the Administrative Law Judge ["ALJ"] took the testimony of Bentley Hankins, a vocational expert ["VE"]. The ALJ asked the VE to consider that the plaintiff had the physical capabilities described by Dr. Blickenstaff, and that she was a younger individual with a high school education. When asked if such a person could perform any of plaintiff's past relevant work, Mr. Hankins replied she could not. When asked if there were other jobs such an individual could perform, he mentioned hand packers and packagers, inspectors, testers, sorters, samplers, weighers, measurers, checkers, assemblers and fabricators. In the national economy, Mr. Hankins testified that there were one and one-quarter million such jobs, and thirty to thirty-five thousand in the State of Tennessee (Tr. 41-42).

In the hearing decision, the ALJ thoroughly discussed the medical evidence (Tr. 16-19). After opining that the plaintiff does not meet or equal a listed impairment, including

4

Listing 1.02(A) as opined by Dr. Boutros, the ALJ found that the plaintiff "has the residual functional capacity to perform light work...which requires lifting no more than 25 pounds occasionally and 10 pounds frequently, standing an walking for four hours out of eight hours, no kneeling or crawling, no more than occasional squatting, no more than occasional reaching overhead, work not requiring management of interpersonal conflicts, work not involving high levels of frustration, and working with objects rather than people." (Tr. 22).

He then discussed the weight given to various medical experts. He gave the opinion of Dr. Blickenstaff "controlling weight," finding it "generally consistent with the light exertional functional limitation determined by the State Agency medical consultants." He also found that the "physical limitations set out in the residual functional capacity more than adequately" accounted for the plaintiff's complaints of pain. (Tr. 23).

He then discussed the opinion and submissions of Dr. Boutros. He noted that Dr. Boutros' statement that plaintiff could perform less than a full range of sedentary work came "almost one year after the last documented visit to Dr. Boutros." He also found that "Dr. Boutros' opinion is of no probative value as it is not supported by his own physical examination and is inconsistent with the overall evidence of record." (Tr. 24).

After concluding that the plaintiff could not perform her past relevant work as a file clerk, he found, based upon the testimony of the VE, that there were jobs in the national economy which the plaintiff could perform. Accordingly, he found that she was not disabled. (Tr. 24-25).

Plaintiff asserts that the ALJ erred in not accepting the opinion of Dr. Boutros that the plaintiff met listing 1.02. In that same regard, she states that the ALJ did not give proper

5

weight to the opinion of Dr. Boutros as a treating physician, and did not give any adequate reasons for rejecting his opinion. She argues that the ALJ violated the provisions of the Social Security Administration's "Hearings, Appeals, and Litigation Law Manual" ["HALLEX"] at Section I-2-5-39 in his utilization of Dr. Blickenstaff, referring to the HALLEX as "the Commissioner's interpretation of his own regulations." [Doc. 13, pg. 14]. Because of the ALJ's alleged error in his use of Dr. Blickenstaff, plaintiff asserts that the question to the VE, and the VE's response, are not supported by substantial evidence.

There is no doubt that the Commissioner is required to give substantial, and even controlling weight, to the opinion of a treating physician, but only *if* the Commissioner finds that the "treating sources opinion on the issues(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable dianostic techniques and is not inconsistent with the other substantial evidence in..." the record. See, 20 CFR § 404.1527(d)(2). Likewise, he must give appropriate reasons for giving lesser weight to a treating physician's opinion.

The ALJ gave three reasons for giving no probative value to Dr. Boutros' opinion. First, he points out that the checked form submitted by Dr. Boutros indicating plaintiff met Listings 1.02 and 1.02A was generated in May of 2009, when the plaintiff's last recorded visit with him was in June of 2008. Second, he points out that Dr. Boutros's opinion on the form was inconsistent with the record of that visit. In order to meet Listing 1.02, one must have "major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity...and chronic joint pain and stiffness with signs of limitation of motion..." 1.02(A) requires "involvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle),

6

resulting in inability to ambulate effectively..." A person has the ability to "ambulate effectively" as defined in Listing 1.00B(2)(b) when they are:

> capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

In that June 2008 visit, Dr. Boutros found plaintiff had full muscle strength, full range of motion in her joints, and a stable gait (Tr. 1292). These are not characteristic of a person who shows "signs of limitation of motion" or who cannot "ambulate effectively."

Finally, the ALJ gave little weight to Dr. Boutros because he found his opinion "inconsistent with the overall evidence of record." Indeed, the objective findings outlined in the recitation of the medical evidence provide evidence for a severe musculoskeletal impairment which causes some limitation in plaintiff's ability to do work related activities, but the fall far short of showing someone totally incapable of even the slightest work activity. Also, the State Agency physicians provide other support for concluding Dr. Boutros' assessment is not accurate. Even State Agency evaluations may trump inadequate or inconsistent opinions of treating doctors. *See, Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006).

Plaintiff also argues that the evaluation of Dr. Breeding was not properly considered by the ALJ. Dr. Breeding's consultative examination was done at a time so soon after her

7

shoulder surgery that it was still in a sling, so his evaluation (Tr. 1252-56) was of little value and entitled to no particular weight.

Plaintiff also asserts that the ALJ abdicated the responsibility of determining the plaintiff's residual functional capacity ["RFC"] to the medical advisor, Dr. Blickenstaff. She argues that the ALJ "did not comply with any of the requirements of..." the HALLEX relating to medical expert testimony.

Section I-2-5-39 of the HALLEX deals with the use of medical experts.[2] The first sentence states that "during the opening statement, the ALJ must explain why ME testimony is necessary." This was not done either in the "opening statement" at the March 4, 2010 hearing or at the close of the July 9, 2009 hearing. However, it was included in a letter from the ALJ to Dr. Blickenstaff attached to the Notice of Hearing sent to plaintiff [Tr. 164-65], which states "your testimony will be primarily for clarification or interpretation of the medical evidence of record." The letter specifically says that Dr. Blickenstaff may be asked to give "a medical assessment of the claimant's physical and/or mental capacity." It went on to say "you will not be expected to testify as to whether or not the claimant is under disability, since you do not have the responsibility for deciding this legal issue." Also, it told the medical expert that the claimant or her counsel were free to ask questions.

This section of the HALLEX also states that "the ALJ must ensure on the record that the ME has examined all medical and other evidence of record." Dr. Blickenstaff was sent the medical records in the file and was asked if he "had an opportunity to review the exhibits in the file...?" which he acknowledged he had. (Tr. 36). The HALLEX next requires "that

---

[2] This section is available online at www.ssa.gov/OP-Home/hallex/I-02/I-2-5-39. html

8

Case 2:11-cv-00217-JRG-DHI   Document 16   Filed 08/28/12   Page 8 of 10   PageID #: 106

the record contains an accurate statement of the ME's professional qualifications." This was done (Tr. 197-98). The HALLEX also requires that the ALJ give the plaintiff an opportunity to ask the ME questions. This was likewise done (Tr. 37), although counsel declined to ask Dr. Blickenstaff any questions regarding his testimony.

The HALLEX also says "an ALJ may not ask an ME to <u>decide</u> what a claimant's RFC is, or whether a claimant is or is not disabled." (Emphasis in original). The word "decide" must be given it's common adjudicative meaning, which in this case would be to "find the fact" or "make the legal decision." Dr. Blickenstaff did not "decide" the plaintiff's RFC, but opined on her exertional limitations, based upon the evidence in the record. The ALJ adopted Dr. Blickenstaff's opinion as to these exertional limitations as the physical component of the *ALJ's* finding of residual functional capacity, but it was the ALJ who *decided* the RFC. The use of Dr. Blickenstaff does not "violate" the HALLEX.

The Court notes that Dr. Blickenstaff's opinion was terse, less than one page, consisting of answers to three questions, two of which were his name and whether he had reviewed the file. The Court also notes that *if* plaintiff's counsel had cross-examined Dr. Blickenstaff, and *if* the examination had revealed an unfamiliarity with a critical part of the medical records on the part of the ME, or a conspicuous flaw in his assessment of the plaintiff's physical capabilities, then a serious argument could have been made that his opinion does not constitute substantial evidence. However, Dr. Blickenstaff was not taken to task until the appellate stage. Thus, the bare-bones but unchallenged opinion of a non-examining medical expert *in this case* constitutes substantial evidence for the ALJ's RFC finding.

9

There having been substantial evidence to support the ALJ's RFC finding, there is also substantial evidence to support the question to, and answer of, the vocational expert. The Commissioner has carried his burden of showing that there are a significant number of jobs in the national economy which the plaintiff can perform. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be GRANTED.[3]

Respectfully submitted:


  s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).